The opinion of the Court was delivered by
Wardlaw, Ch.
John Stocks Thorne, by his last will and testament, executed August 11, 1824, appointed Richard Eordham executor of his will, and after a specific devise disposed of his estate as follows : “ All the rest of all my real and personal estate I give unto Richard Eordham, to be held in trust by him for John, Thomas, Philip, Rebecca, Caroline and Susan Thorne, persons of color, and their heirs forever, to be applied to the sole use and benefit of them, the said John, Thom$£^^ili|)tRebecca, Caroline and Susan.” The testator died Jme fje^t daj^fter the date of his will. J>v
The plaintiff is a black w^&n^^;vmotíiW"$f |he legatees, John, Thomas, Philip, Carolim $g.d SuhíS, ^§lj.o wc^ recognized by the testator as his natural%lSf|Ken. SÍier fyss' formerly the slave of the testator; was emancnptejM^plijijn j£ 1811, and was afterSvards called by the name of Rebetíü^JEb@í4ie.
Her title to the legacy is resisted in behalf of another Rebecca, a brown woman, sometimes called Rebecca Thorne and sometimes Rebecca Eordham. Her mother was Judy; and to be her father seems to have been claimed by both testator and executor. Judy and her child Rebecca were bought as slaves by the testator, November 18, 1817, for $>700; and they were transferred by him, November 27, 1817, to his friend Eordham, on a nominal consideration. Rebecca, the brown, was always practically free ; and in 1846 she established her freedom against Eordham in the Court of Law, by process de homine replegiando. It seems that she lived in the family of the plaintiff in early life until March 8, 1825, when she was removed to the house of another woman of color. She was maintained and educated and otherwise treated as the legatee, without any adverse claim, until about the time of filing this bill, which was on April 22, 1848, although the executor has not paid over the principal of this share of the estate. *224 The plaintiff, Rebecca, the black, relies principally upon the facts, that, at the date of the will and of the testator’s death, which maybe considered for this purpose cotemporaneous, she had acquired by reputation the name of Rebecca Thorne, by which the legatee* is described in the will; and that she was then free, and capable of taking on the terms of limitation in the will to her and her heirs ; and she urges that the other claimant was not, at the date of the will, known as Rebecca Thorne, and that in fact she was a slave, and incapable of taking to herself and her heirs.
The proof is clear of the title of the plaintiff to freedom and to the name of Thorne ; but it is not decisive against the equal claim, in these particulars, of Rebecca, the brown.
The question, whether Rebecca, the brown, was a free person at the death of the testator, is immaterial, except as the fact may operate upon the meaning and application of the terms of the will describing the object of testator’s bounty. Granting that she was then a slave, she might still be the person described in the will as legatee, and until the Act of 1841, might take the legacy, with the assent of the executor ; if not for her own use, for the benefit of her master; and the limitation of the estate to hews, where a slave and free persons are named together, has no appreciable effect in ascertaining the meaning of the terms designating the legatee.
Unfortunately for the plaintiff, she is the strongest witness for her adversary. Independent of her acts and declarations, it would be difficult, probably from the youth and obscurity of the party, to find in the proofs, distinct evidence that Rebecca, the brown, had acquired the name of Thorne at the death of the testator, although she had been so designated for more than twenty years. Immediately after the death of testator, namely, August 14,1824, plaintiff gave a receipt to Fordham for $ 15 for the use of the children of testator, describing therein Eordham as “ trustee for my children, John, Thomas, Philip, Rebecca, Caroline and Susan Thorne, as per the will of their father, John S. Thorne.” At the same time she signed an acknowledgment of having *225 received from Fordham, “ trustee for tbe children of the late John S. Thorne, for the use of said children,” various articles of apparel, a watch, umbrella, &c. Qn August 24, 1824, she signed a receipt to Fordham, “ trustee for the -children of the late John S. Thorne, viz : John, Thomas, Philip, Eebecca, Caroline and Susan, as per the will of their father,” for $102.50, “ to purchase mourning for the female children.” Qn October 8, 1824, she gave another receipt to Fordham as trustee for the children of $50 for their support ; and fropm November, 1824, to March, 1825, she gave ■monthly receipts of $30 for support of the -children. On May 10, 1825, she entered into an agreement with Fordham “ as trustee-for the children of the late John Stocks Thorne” “to attend to the ease and comfort of said children, viz: John, Thomas, Philip, Eebecca, Caroline and Susan,” in consideration of $20 to be paid to her monthly; and from April, 1825, until September, 1844, inclusive, she gave monthly receipts to the defendant as trustee for Thorne’s children, at the rate of $5 for each of the ■children who were with her ; and also for the greater part of the time gave like receipts of $5 a month for her wages in attending to the children. On October 1, 1844, she accepted a conveyance for her life of a house and lot in Boundary street in this city, from John, Philip, Eebecca, the brown, Susan and Caroline, (Thomas being then dead,) in and by which conveyance the grantors designate themselves by the name of Thorne, and as children of the testator, and devisees of said.house and lot under his will, and convey the premises to their “mother, Eebecca Thorne,” as á residence for life.
Eebecca, the black, is unlettered; and the fact, that she is mentioned in this deed of conveyance and in the earliest receipts as mother of the other Eebecca, is urged as proof of fraud on the part of the defendant, It is more natural, however, to attribute this mistake to the ignorance of the scrivener. Two of the witnesses, Whitney and Addison, seem to have fallen into the same error. An appellative of kindred is often bestowed ■;where there is no .consanguinity under such circumstances as existed in *226 this case. These acts of the plaintiff haying almost the force of an estoppel, with the additional fact of her acquiescence for twenty-four years, are serious obstacles to her claim. If the terms of the will describing the legatee applied certainly to her alone, we should not hold that the technical trust between executor and legatee was barred by the statute of limitations or by lapse of time, while the executor acknowledges that the legacy is unsatisfied, and that he retains in his hands assets of the estate to the amount of the legacy. But much suspicion is properly thrown on the plaintiff’s case by her great delay in the assertion of her claim and by her recognition of another’s title. As the evidence now stands, the case may be regarded as one of what Lord Bacon calls “ equivocation,” where the words describing the legatee apply equally to two persons; and in that state of things parol evidence is admissible of the declarations of the testator, at least at the time of making his will, and of extrinsic facts serving to point the application of the terms of gift. (Gord vs. Needs, 2 Mees. & W. 149; Hiscocks vs. Niscochs, 5 Mees. & W. 363; Careless vs. Careless, 1 Mer. 384.) But the course of the plaintiff, continued for so long a time, has been calculated to disarm the adverse .claimant, and obstruct her proofs. Who can tell, if this pretension of the plaintiff had been set up within reasonable time, while the witnesses who attested the will, and others who were intimately acquainted with the testator's affairs, were in life, that full and explicit proof of the title of Rebecca, the brown, may not have been given ? Claimants are not to be encouraged to speculate upon the obscurity which time may produce in stale transactions.
The order in which the name of Rebecca is inserted among the legatees is a circumstance not conclusive, but of some weight against the claim of the plaintiff. It is very unusual, in the enumeration of a mother and her children to set down the name of the mother in the midst of those of her children.
So, too, the description in the will, of Rebeccar, and the other legatees, as “persons of color,” is apretty strong circumstance against *227 tbe plaintiff. It is not according to the use of language in this region to speak of one altogether black as aperson of color. The phrase is almost exclusively applied to one of mixed blood and color.
Every one who makes a claim in Court is bound to establish his title to the satisfaction of the tribunal. In this case we are not satisfied with the showing of the plaintiff.
These views relieve us from the determination of the question as to the effect of the answer, setting forth certain declarations of intention by the testator, before and after making the will.
It is ordered and decreed, that the circuit decree be affirmed, and the appeal be dismissed. .
JOHNSTON, DüNKIN and DaRGAN, CC., concurred.

Appeal dismissed.